## COCKRELL v. THOMPSON.

### No. 5829.

Court of Appeal of Louisiana.
Second Circuit.

Jan. 10, 1939.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellant.

Edward L. Gladney, Jr., of Bastrop, for appellee.

DREW, Judge.

On October 25, 1937, at approximately 6:50 p. m., defendant's locomotive, pulling 105 freight cars, struck and killed three head of livestock owned by plaintiff, and he instituted this suit to recover the amount of $530, the alleged and admitted value of the stock.

The lower court awarded judgment as prayed for and defendant prosecuted this appeal.

It is admitted that at the time the livestock was killed it was dark, the night was clear, and the railroad track was straight for a distance of two or three miles each way from the place where the animals were struck. Defendant's track was fenced along its right of way, but due to the fact that plaintiff's farm lay on both sides of the track, a crossing was provided and a "gap" left in the fence with the intention of hanging a steel gate. The fence was constructed in March, 1937, and from that time until the accident occurred a temporary gate, commonly known as an "Arkansas gap", was used to prevent stock from coming onto defendant's right of way. This "gap" consisted of four strands of barbed wire leading from the stationary fence post and tied to a temporary post which was not set into the ground but loosely held, when closed, to an adjoining post by wire loops at top and bottom. This "Arkansas gap" was in bad condition and was constantly being repaired by plaintiff. It was susceptible of being knocked down or pulled apart by the livestock. It was through this "gap" that plaintiff's stock entered the right of way of defendant company on the night they were killed.

Defendant contends that its right of way was fenced and the fence was in good condition; that the "gap" was placed there for the sole convenience of plaintiff and it was his duty to keep it in a state of repair; and that his failure to do so did not remove the case from the application of Act No. 110 of 1886, which does away with the presumption of liability where the railroad company has its line of track fenced and kept in good order. To the contrary, the plaintiff contends that Act No. 70 of 1886 is applicable and it is encumbent upon defendant to prove that it was free from negligence. So far as the decision of this case is concerned, it makes no difference which act applies as we are convinced that the testimony shows that defendant has met the burden placed upon it by Act No. 70 of 1886, and has shown that its employees were free from any negligence.

The train consisted of the locomotive and 105 freight cars. It was traveling in open country at a rate of speed of 40 miles per hour. The shortest distance within which it could have been stopped was approximately 2300 feet. Its headlights were good and illuminated the track 850 feet ahead of the locomotive. The lights were focused on the center of the track and did not illuminate the entire right of way. The stock came from the direction of the "gap" and ran onto the track 400 feet ahead of the locomotive. The engineer and fireman saw them at that time and could not have seen them sooner. Immediately the engineer sounded the whistle, rang the bell, opened the steam cocks and applied the emergency. The three head of stock which were killed ran straight down the track ahead of the locomotive for a distance of 660 feet before they were struck. The speed of the train at that time had been reduced to 25 miles per hour and finally came to a full stop. It is clear from the testimony that the train was stopped in the shortest possible distance after the stock was seen by the engineer and fireman, and they saw the stock as soon as it was possible for them to have been seen. These facts, in our opinion, relieve the defendant of any liability.

The judgment of the lower court is erroneous and it is therefore reversed and the demands of the plaintiff are rejected at his cost.